**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
DENNIS SOBIN,                                 )
                                              )
            Plaintiff,                        )
                                              )
    v.                                        )        Civil Action No. 19-cv-02580 (ABJ)
                                              )
DISTRICT OF COLUMBIA,[1]                      )
                                              )
            Defendant.                        )
_____       )

**MEMORANDUM OPINION**

The District of Columbia has filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss

plaintiff Dennis Sobin's lawsuit against it for failure to state a claim.  The District has certainly

given the 80 year old plaintiff the runaround; plaintiff has received conflicting information from

various local officials. But while he is understandably frustrated, the fact that he may have a

legitimate grievance does not mean that he has suffered a deprivation of constitutional dimensions,

particularly given his own admitted errors when transferring ownership of his car.  For that reason,

as will be explained in more detail below, the Court will grant the motion and dismiss the case.

---

1       Plaintiff sued the District of Columbia Department of Motor Vehicles in particular, but for
purposes of this lawsuit, the District itself must be substituted as the defendant. _See Hunter v. D.C.
Child & Family Servs. Agency_, 710 F. Supp. 2d 152, 157 (D.D.C. 2010) (finding that when a
plaintiff erroneously names as a defendant a District of Columbia agency instead of the District of
Columbia itself, a court may substitute the District as a defendant for its agency).  A noncorporate
department or other body within a municipal corporation is _non sui juris_, and generally, bodies
within the District of Columbia government – such as the Department of Motor Vehicles – are not
suable as separate entities.  _See, e.g., Amobi v. District of Columbia Dept. of Corrections_, 755 F.3d
980, 987 n. 5 (D.C. Cir. 2014); _see also Nix El v. Williams_, 174 F. Supp. 3d 87, 93 (D.D.C. 2016)
(same); _Hickman v. Library of Congress_, 74 F. Supp. 3d 329, 331 (D.D.C. 2014) (same); _Miller v.
Board of Ed. of District of Columbia_, 106 F. Supp. 988, 991 (D.D.C. 1952) (same); _McCall v.
District of Columbia_, No. 17-1325 (JEB), WL 4877289 at *2 (D.D.C. Oct. 26, 2017) (holding that
District of Columbia Department of Motor Vehicles is _non sui juris_).

## FACTUAL BACKGROUND

According to the complaint, plaintiff sold his 2006 Chrysler Sebring convertible on or about April 30, 2019. *See* Compl. [Dkt. 1] at 7.[2] He states that he then disposed of the vehicle's license tags "in accordance with DMV regulations by throwing them away on the same day in two separate dumpsters." *Id.* He submitted a report online to the District of Columbia Department of Motor Vehicles ("DC DMV"), formally representing that he "no longer owned the vehicle and had disposed of the plates." *Id.* At some point thereafter, plaintiff alleges, DC DMV acknowledged that the tags were no longer in plaintiff's possession and that he "disposed of them in accordance with their regulations." *Id.*[3]

Plaintiff was issued and received "a refund check for the unused time of the car registration since [he] was no longer in possession of the license plates." Compl. at 7. Approximately 45 days later, though, he allegedly received a notice from DC DMV, indicating that the Sebring had been ticketed and that the tickets were overdue. While the complaint does not include the date of the charged infractions, plaintiff alleges that the penalties were unfairly assessed because he did not own or possess the Sebring at the time the tickets were written. *Id.* He speculated in his complaint

---

2      The Court will refer to the ECF-generated page numbers when citing to the complaint.

3      Defendant notes that while plaintiff conclusorily alleges that he disposed of the tags in accordance with DC regulations, he does not allege that he actually removed the vehicle registration sticker as the DMV website plainly emphasizes and the regulations require. *See* Defendant's Memorandum in Support of Motion to Dismiss [Dkt. 7-1] ("Def's Memo.") at 7–8, citing HTTPS://DMV.DC.GOV/SERVICE/TAG-SURRENDER. And plaintiff candidly acknowledges that he likely failed to fully remove the vehicle registration sticker from the car because – like most people -- he did not own an appropriate tool for that purpose. Pl.'s Opposition to MTD ("Pl.'s Opp.") [Dkt. 9], at 1. ("The government suggests that I am still getting tickets for my old car because I didn't scrape the registration sticker off the car when I sold it…. That's probably true. I recall trying to scrape off the sticker. But since I did not have the right tools and since I am almost 80 years old, I probably did not get it off completely. So let's assume the sticker was still readable.")

that "[a]pparently the new owner or someone he gave or sold the car to had somehow found one of my license plates and put it on the car and was using the car with the dead license plate I had disposed of and reported as dead plates to DMV." *Id.* [4]

Plaintiff contested the tickets, *see* D.C. Code § 50–2302.05, and he requested a hearing. Compl. at 7. A hearing was held through the DC DMV Adjudication Services, *see* D.C. Code § 50–2302.06, on June 27, 2019.  The hearing examiner apparently informed plaintiff that "ticket writers for DMV do not have information on dead plates and will continue to write tickets if plates are being used."  *Id.*  He therefore denied plaintiff's request to rescind the tickets, indicating that they remained plaintiff's responsibility.  He further advised plaintiff to report the license tags as stolen to the District of Columbia Metropolitan Police Department.  *Id.*

On June 28, 2019, plaintiff went to the Second District of the Metropolitan Police Department.  *Id.*  According to the plaintiff, the police declined to take a report on the grounds that "the license plates were not stolen but rather disposed of," and the DC DMV "was at fault for giving [plaintiff] the tickets after [he] reported them disposed of and [were] therefore dead plates." *Id.*

Given those developments, plaintiff filed a timely motion for reconsideration of the Adjudication Services decision on July 24, 2019. *Id.*; *see* D.C. Code § 50–2303.11. The motion was apparently denied on July 26, 2019.  Compl. at 7.  Plaintiff was instructed that he could appeal the determination, *see* D.C. Code § 50–2304.02, but that he would be responsible for an administrative fee and the cost of the original hearing transcript, Compl. at 7.  He was also

---

4      As noted in footnote 3 above, though, by the time plaintiff filed his response to defendant's motion to dismiss, he conceded that he'd never removed the registration sticker from his windshield, and he considered that fact to be " a much more likely explanation for what's happening than that the new owner found one of my old tags in a dumpster." Pl's Opp. at 1.

instructed that he was required to pay the tickets while he awaited the outcome of any appeal.  He attests that he has been financially unable to pay the tickets, *id.*, and that he has been continuing to incur unspecified "additional tickets and penalties for other violations" relating to the Sebring, *id.* at 8.

Plaintiff argues that the DMV's license tag disposal process is unconstitutional and violative of his due process rights because despite his attempts to follow the required procedures in good faith, he has been unfairly punished: he is receiving tickets for a vehicle he no longer owns. Compl. at 5.  Plaintiff believes this is a direct result of a confusing municipal policy. *See id; see also* Pl.'s Opp. at 2, citing TAG SURRENDER, DMV.DC.GOV, HTTPS://DMV.DC.GOV/SERVICE/TAG-SURRENDER (last visited August 6, 2020). He submits that if he is in fact receiving tickets because the registration sticker was not removed from the car, that "proves that it's the government's fault that I'm still getting tickets for the car I no longer own." Pl.'s Opp. at 2.

> What right can the government have to keep sending me tickets when it knows I sold the car? If there is some regulation that authorizes the government to send tickets to a person it knows is the former owner of a car, that's the regulation I'm challenging. And if there's no such regulation, then what authority does the government have to keep sending me tickets?

*Id.*

In his request for relief, plaintiff asks the Court "to declare that [his] due process rights are being violated in the way this DMV regulation is being administered and applied to [him] and others similarly situate[ed]"[5] and to "rescind" the penalties already assessed.  Compl. at 5.  He also demands that the Court "declare [DC DMV's] regulation unconstitutional," *id.* at 8, although he

---

5       In the event plaintiff's reference to others similarly situated was an effort to bring a class action, the Court notes that a *pro se* litigant may represent only himself in federal court.  *See* 28 U.S.C. § 1654; *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984).

does not identify the particular regulation that offends the constitution. The defendant moved to dismiss the complaint [Dkt. 7], plaintiff opposed the motion [Dkt. 9], the District replied [Dkt. 10], and the matter is ripe for decision. The Court, like the District, *see* Def's Mem. at 7–8, assumes that plaintiff is challenging Title 18, Section 415, of the District of Columbia Municipal Regulations ("DCMR"), which governs the proper cancellation of registration and disposal of tags following the sale of a vehicle.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim."); *Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In

ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Plaintiff invokes 42 U.S.C. § 1983, which permits an individual to bring a civil action for damages based on a deprivation of his constitutional rights. The statute provides:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

*Id.* The statute "is not itself a source of substantive rights; rather, it is a method of vindicating federal rights conferred elsewhere." *Melton v. District of Columbia*, 85 F. Supp. 3d 183, 192 (D.D.C. 2015) (citing *Albright v. Oliver*, 510 U.S. 266, 269–70 (1994) and *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

A necessary predicate for any section 1983 claim, then, is a plausible allegation of a constitutional violation. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm.").[6]

---

6       Defendant correctly points out that in order to hold a municipality liable for a violation of section 1983, the plaintiff cannot simply rely on misconduct by city employees, but he must establish that that the municipality acted in accordance with a "government[] policy or custom,

I.    **Plaintiff has failed to state any plausible violation of due process.**

Plaintiff alleges that the DMV policy infringed his due process rights under the Fifth and Fourteenth Amendments.[7]   Compl. at 3.   Plaintiff does not specify whether he intended to assert a cause of action for procedural or substantive due process; while the facts presented lend themselves more readily to a procedural due process analysis, the Court will address both theories in an abundance of caution.

a.    **Plaintiff fails to allege that he was deprived of a constitutionally protected interest without due process.**

The District reads the complaint to allege an unconstitutional denial of an opportunity to be heard.   *See* Def's Mem. at 5–6; Reply at 2.   To determine whether the plaintiff has stated such a claim, the Court must assess whether plaintiff has plausibly alleged that he was deprived of a protected interest, and, if so, whether the complaint indicates that he has not received the process due.   *See UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees of Univ. of D.C.*, 56 F.3d 1469, 1471 (D.C. Cir. 1995).   "An essential principle of [procedural] due process is that a

---

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S 469, 479 (1986) (emphasis in original).   This requirement flows directly from the statute itself; the Supreme Court explained that the rule against vicarious liability implements the causation requirement in the statute, which imposes liability on any person who "subjects" a person to a deprivation of rights or one who "causes" a person "to be subjected" to a deprivation of rights.   *See Monell,* 436 U.S. at 692. The defense contends that the complaint is inadequate in this regard, *see* Def's Mem. at 6, but plaintiff obviously intended to challenge a municipal regulation, and in light of its finding of a lack of a constitutional deprivation, the Court need not reach the issue.

7      The Fourteenth Amendment is not applicable to the District of Columbia. *Bulluck v. Washington*, 468 F.2d 1096, 1100 n. 9 (D.C. Cir. 1972); *Neild v. District of Columbia*, 110 F.2d 246, 256 (D.C. Cir. 1940), but the Fifth Amendment's guarantee of due process of law is. *Bulluck*, 468 F.2d at 1100 n. 9; *Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954).   Therefore, the Court construes plaintiff's due process claim under the Fifth Amendment.

deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950)). Therefore, for plaintiff to survive a motion to dismiss under Rule 12(b)(6), he must allege, at a minimum, that he has been deprived of either a life, liberty, or property interest protected by the due process clause. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–72 (1972). Only after finding the deprivation of a protected interest does the Court look to see if the government's procedures comport with due process. *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (citation omitted).

Plaintiff appears to be alleging that he was deprived of property in the form of the monetary civil penalties assessed by the DC DMV. *See* Compl. at 5, 8. While it is not entirely clear whether plaintiff has ever actually parted with any funds, a civil penalty may in some cases constitute a protected property interest for purposes of the due process clause, and here plaintiff has alleged that with respect to some tickets, the matter has been adjudicated, and the penalties are owed and accruing interest. *See, e.g., Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 303–04 (1981).

"[T]he Supreme Court has established a 'general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.' " *UDC Chairs Chapter*, 56 F.3d at 1472 (quoting *United States v. James Daniel Good Real Prop*., 510 U.S. 43, 48 (1993)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (1950).

8

The government must provide "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Courts determine the adequacy of the process the government provides for a hearing by weighing the balance of three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  Beyond these threshold requirements, the extent of procedural protections the Constitution mandates varies with the particular situation and the interest at stake. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Here, the private interest affected by the enforcement of the traffic infractions is plaintiff's "property interest in his money, which is not insignificant." *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 810 (D. Md. 2008) (relying on *Plumer v. State of Md.*, 915 F.2d 927, 932 (4th Cir. 1990)). However, a department of motor vehicle's interests "in ensuring full compliance with the law—are fundamental to the effective function of the City, and generally are not outweighed by individual property interests." *Id.* (citing *Plumer*, 915 F.2d at 932) (finding that deprivation of a citizen's property interest in his driver's license did not require more than notice and a hearing)).

Plaintiff's own complaint alleges that: (1) he contested the tickets through the DC DMV Adjudication Services and received an administrative hearing where he was afforded an opportunity to be heard; (2) he filed a timely motion for reconsideration of that decision and received a prompt determination; and (3) he was advised of his additional right to appeal the denial of his request for reconsideration, albeit with costs, which he declined to pursue.  Compl. at 7.

And, if plaintiff had filed and lost an appeal, he could have sought judicial review in the Superior Court of the District of Columbia. *See* D.C. Code § 40-635.

Thus it is evident from the face of the complaint that plaintiff received both adequate notice and more than one opportunity to be heard. *See Loudermill*, 470 U.S. at 546. "Events may not have unfolded as Plaintiff wished[,]" but such dissatisfaction does not inevitably "form a basis for a due process violation." *Melton*, 85 F. Supp. 3d at 193.  Thus, plaintiff has not stated a claim for a due process violation based on insufficient notice or the denial of his right to be heard.

### b.   18 DCMR § 415.1 is not unconstitutionally vague.

Plaintiff alleges that the District "established and enforced a regulation in a way that is impossible to follow."  Compl. at 4; *see also id.* at 7 ("This complaint is against the DC Department of Motor Vehicles for enforcing a regulation that is impossible to follow and penalizes citizens for not following it."). While, as noted by the District of Columbia, plaintiff does not specifically identify the regulation(s) that he seeks to challenge, *see* Def's Mem. at 6–7, the Court will construe plaintiff's allegations as a challenge to certain provisions of 18 DCMR § 415.1, in particular, those that are summarized on the DC DMV website on the "Tag Surrender" page cited in plaintiff's opposition, Pl's Opp. at 2, as unconstitutionally vague.

The Due Process Clause 'requires the invalidation of laws [or regulations] that are impermissibly vague.' " *United States Telecom Ass'n v. FCC*, 825 F.3d 674, 734 (D.C. Cir. 2016) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). The "[v]agueness doctrine addresses two concerns: 'first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.' " *Id.* (quoting *Fox Television*, 567 U.S. 239 at 253). "The degree of vagueness that the Constitution tolerates . . . depends in part on the

nature of the enactment." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "[T]he Constitution is most demanding of a criminal statute that limits First Amendment rights." *DiCola v. FDA*, 77 F.3d 504, 508 (D.C. Cir. 1996); *see Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971). "The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are less severe[.]" *Hoffman Estates*, 455 U.S. at 498.

"[R]egulations will be found to satisfy due process so long as they are sufficiently specific that a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, would have fair warning of what the regulations require." *Freeman United Coal Mining Co. v. Fed. Mine Safety & Health Review Comm'n*, 108 F.3d 358, 362 (D.C. Cir. 1997); *Throckmorton v. Nat'l Transp. Safety Bd.*, 963 F.2d 441, 444 (D.C. Cir. 1992). "When interpreting a statutory term, we are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask." *United States v. Bronstein*, 849 F.3d 1101, 1107–08 (D.C. Cir. 2017) (citing *Coates*, 402 U.S. at 614).

"Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning "specifie[s] no standard of conduct . . . at all." *Id.* (internal quotation marks and citations omitted). "As a general matter, the vagueness doctrine does not doubt the constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." *Id.* (citing *Nash v. United States*, 229 U.S. 373, 3771 (1913)) (other citation and internal quotation marks omitted); *see United States v. Williams*, 553 U.S. 285, 306 (2008) ("What

renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").

In light of this authority, the Court finds that 18 DCMR § 415.1, particularly given the detailed explanation on the DC DMV website, is not unconstitutionally vague.  At the outset, the Court notes that the District's registration cancellation policies are civil requirements, and this case does not involve a criminal statute that implicates or burdens the exercise of First Amendment rights. Thus, a rigorous review is not warranted here. Second, the policies are sufficiently specific to give a reasonably prudent person fair warning of what the regulations require.  Plaintiff insists that the policies as a whole are "impossible to follow," Compl. at 4, 5, 7, 8, but facial challenges to the vagueness of a regulation should not be upheld unless "the enactment is impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 495.

Here, the applicable provisions of Section 415.1 appear to be as follows:

> 415.1     A registrant who loses or disposes of his or her ownership of a vehicle for which valid registration is outstanding shall remove, or cause to be removed, the owner's identification tags from the vehicle.
> …
>
> 415.3     Unless the registrant shall within five (5) business days (which time may be extended by the Director for cause shown) after the loss or disposal of ownership, acquire another vehicle, he or his agent shall, within that time, deliver to the Director the owner's identification tags accompanied by the registration card.
>
> 415.4     Upon receiving the registration card and identification tags, the Director shall issue, upon demand, a receipt thereof and cancel the registration and tags. Those tags shall not be issued to any other person during the then current registration period and may be mutilated or disposed of by the Director.

Plaintiff has not specified what aspects of the regulation are confusing, and they clearly set forth the basic requirements for individuals seeking to return their vehicle tags and/or relinquish

12

ownership.  The tags shall be (1) removed and, (2) within five days, delivered with the registration card to the Director.  Upon demand, the Director shall issue acknowledgment of receipt.  *See id.*

These requirements are also detailed on the DC DMV website.[8]  *See* TAG SURRENDER, DMV.DC.GOV, HTTPS://DMV.DC.GOV/SERVICE/TAG-SURRENDER (last visited August 6, 2020). The Tag Surrender page announces: "You must cancel your vehicle tag registration or surrender your vehicle tags, to DC DMV" when you sell your car. The website lists other circumstances when cancelling registration or tag surrender would be necessary, and it addresses such matters as tag transfers, obtaining a refund for the unused portion of a vehicle registrations, and the proper timing for cancellation of the applicable motor vehicle insurance. The website advises that "[t]he quickest way to cancel tag registration is online at the link below," and there are two "hot" links to the vehicle tag cancellation online form on the page.  For those who opt to surrender their tags instead, the site specifies where the tags can be mailed, sent by certified mail, or delivered in person.  *See id.*

While the website offers a vehicle owner the option to cancel his registration online, it makes it clear that a person cancelling a registration online must still properly dispose of the physical tags, rendering them unsuitable for future use.  *Id.* ("After cancelling your tag registration online, you are responsible for properly and permanently disposing of your vehicle tags. Please completely mark through the tag number with a permanent marker prior to disposal or recycling.")

---

8       In ruling on a motion to dismiss for failure to state a claim, a court may ordinarily consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d at 196. Not only does plaintiff himself reference to and and base his allegations upon information presented on the DC DMV website, *see* Compl. at 7; Pl.'s Opp. at 2, but the Court may also take judicial notice of information posted on official public websites of government agencies. *See, e.g., Cannon v. District of Columbia*, 717 F.3d 200, 205 n. 2 (D.C. Cir. 2013).

And, notably for purposes of this case, the webpage specifically warns: "after cancelling your tag, please remember to also remove the vehicle registration sticker from the vehicle.  Failure to do so could still result in tickets being issued against the cancelled tag based on the information on the registration sticker." *Id.*  The site reiterates that the registrant is "responsible for any ticket infractions incurred on the tags if you do not surrender them to DMV OR properly dispose of them if you cancel your tags online." *Id.*

Even if one reviews the factual allegations in complaint in the light most favorable to the plaintiff, the Court is not required to accept his conclusion that the regulation is "impossible to follow."  The complaint fails to state a claim that the municipal regulations are unconstitutionally vague; both 18 DCMR § 415.1 and the website provide clear directives and details regarding the cancellation of registration and disposal of vehicle tags.  While one has to pay close attention to the various options and sift through the information provided carefully, the DMV's regulations "are not automatically invalidated as vague simply because difficulty is found in determining" what is memorialized.  *United States v. Nat'l Dairy Products Corp*., 372 U.S. 29, 32 (1963)). Regulations need not achieve "mathematical certainty" or "meticulous specificity," and may instead embody "flexibility and reasonable breadth." *Freeman*, 108 F.3d at 362 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Under these standards, plaintiff has not carried the "heavy burden" required to prevail in a facial vagueness challenge. *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1078 (D.C. Cir. 2003).

It appears that the plaintiff opted to cancel his registration online and then dispose of the tags himself.  By his own account, though, his execution of those steps was somewhat imperfect; while he emphasizes that he utilized two different dumpsters, that particular precaution is not what is required. He does not allege that he defaced the tags with a permanent marker before depositing

14

them in the trash in accordance with the instructions, and he concedes that he did not remove the critical registration sticker from the vehicle before delivering it to the new owner.

The Court accepts, though, plaintiff's allegation that he followed the regulation "in good faith." He tried. It understands that he must have felt somewhat whipsawed when the Adjudication Bureau told him that the tickets were his responsibility and then a police officer told him something else. But unfortunately, plaintiff has not articulated a basis for suing the DMV. He takes the position that it should be the government's responsibility to alert the "ticket writers," and to track down the party responsible for violations after it has been duly informed that the car was sold. But there is no legal principle that supports the Court's issuance of an order directing the District to do that. Plaintiff may have to take the matter up with the person who bought the car.

The relevant policies adequately detail the requirements that must be met by a registrant. Therefore, the Court finds that plaintiff has failed to state a claim that a reasonably prudent person would not have fair warning of the requirements and that the law is unconstitutionally vague.

### c.  Plaintiff has failed to allege a substantive due process violation.

The complaint fares no better of one construes it to be alleging a substantive due process violation.

The substantive component of the Due Process Clause protects fundamental rights which arising out of "ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). To allege a substantive due process violation, a plaintiff must allege "that state officials are guilty of grave unfairness in the discharge of their legal responsibilities[,]" *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) – that they have engaged in behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience[,]" *Estate of Phillips v. District of Columbia*, 455 F.3d 397,

403 (D.C. Cir. 2006) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

The D.C. Circuit has held that there were only two ways in which a plaintiff may show grave unfairness, "[1] a substantial infringement of state law prompted by personal or group animus, or [2] a deliberate flouting of the law that trammels significant personal or property rights." *Silverman*, 845 F.2d at 1080. Thus, substantive due process has a "substantiality requirement built in—unlike procedural due process, under which there may be recovery even for nominal damages." *Tri County Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997) (citing *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)). The D.C. Circuit has further explained that "the concept of substantive due process, itself oxymoronic, [applies] to actions that in their totality are genuinely drastic . . . [U]nless the victim of government imposition has pushed its local remedies to the hilt, it ordinarily will not be able to show the necessary substantiality." *Id.* (internal citation omitted).

In evaluating such a claim, it is important for the Court "to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the city allegedly did to deprive [them] . . . of that right." *Collins*, 503 U.S. at 125. Plaintiff's allegations hardly rise to the level of a substantive due process violation, because he has not alleged that DC DMV's conduct falls into one of the two categories recognized by the D.C. Circuit as showing "grave unfairness." *Silverman*, 845 F.2d at 1080. First, plaintiff has not alleged that a substantial violation of state law occurred or that the violation was prompted by personal or improper animus. Second, plaintiff has not alleged a deliberate flouting of a law that trammels significant property rights. While plaintiff has alleged that he finds the law confusing and unfair, he has failed to assert the requisite substantiality that is necessary to sustain a substantive due process claim. He also

voluntarily declined to fully pursue his "local remedies," *Tri County Indus.*, 104 F.3d at 459, prior to filing with this Court.

Further, substantive due process claims have only been recognized for conduct rising to a serious deprivation of constitutional rights. *See Albright*, 510 U.S. at 272 ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). The D.C. Circuit and the Supreme Court have "cautioned against expanding the substantive rights protected by the Due Process Clause 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (quoting *Collins*, 503 U.S. at 125).

Here, notwithstanding the financial and emotional burdens imposed on this gentleman by the accumulation of unpaid tickets and penalties, the Court cannot find that the actions alleged in the complaint satisfy the requirement of egregious conduct that "shocks the conscience." *Estate of Phillips*, 455 F.3d at 403.[9]

## CONCLUSION

For the foregoing reasons, the Court grants the District of Columbia's Motion to Dismiss the Complaint. A separate Order will issue.

AMY BERMAN JACKSON
United States District Judge

Date:   August 14, 2020

---

[9]     *See Psychas v. District Dep't of Transportation*, No. 18-0081, 2019 WL 4644503 at *17–*18 (D.D.C. Sept. 24, 2019) (collecting cases where substantive due process claims have been dismissed for objectively far more serious conduct).